UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSE A. VENTURA, 96-B-2014,

        Plaintiff,

v.

**DECISION AND ORDER**
01-CV-434S

DR. SINHA, NURSE BACCACIO, NURSE BETTY
FASSIO, E. MINARDO, SERGEANT SULLIVAN,
OFFICER A. MILLER, OFFICER G. PEPERONE
OFFICER MONTANAR, and OFFICER M. LESSARD,

        Defendants.

## I.  INTRODUCTION

Plaintiff Jose Ventura commenced the instant action *pro se* under 42 U.S.C. § 1983 against Defendants, all of whom are employees of the New York State Department of Corrections ("DOCS"), alleging that they violated his Eighth Amendment rights during his incarceration at Orleans Correctional Facility ("OCF").  Specifically, Plaintiff claims that Defendants used excessive force against him on two occasions and acted with deliberate indifference toward his medical needs on several occasions.  Presently before this Court is Defendants' Motion for Summary Judgment.  (Docket No. 81).[1]  For the following reasons, the motion is granted in part and denied in part.

---

[1] In support of their motion, Defendants filed the following documents: a Memorandum of Law, a Rule 56 Statement of Undisputed Facts consisting of 229 paragraphs, the Declaration of Karen Brown, with attached exhibits, the Declaration of Edward Minardo, with attached exhibit, the Declaration of Joseph P. Sullivan, with attached exhibits, the Declaration of Gary Peperone, with attached exhibit, the Declaration of Mark Montanari, with attached exhibits, the Declaration of Allen P. Miller, with attached exhibits, the Declaration of Michael Lessard, and the Declaration of Dr. Brij Sinha, with attached exhibits. (Docket Nos. 81 - 91).
    In opposition to the motion, Plaintiff filed the following documents: a Rule 56 Response to Defendants' Statement of Material Facts and Plaintiff's Statement of Material Facts consisting of 77 additional paragraphs (Docket No. 100), a Memorandum of Law, and Plaintiff's Affidavit, with attached exhibits. (Docket No. 99).

## II.  BACKGROUND

**A.     Procedural History**

Plaintiff's Complaint was entered on the docket on June 20, 2001. Because Plaintiff was granted *in forma pauperis* status, his Complaint was screened pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a). As a result of this screening process, Plaintiff's claims of assault, battery, and negligence were dismissed without prejudice, and his claims against OCF, its Superintendent, Deputy Superintendent, and various other individual defendants were dismissed. Plaintiff's excessive force and deliberate indifference claims survived, leaving as Defendants: Dr. Sinha; Nurse Baccacio; Nurse Betty Fassio; E. Minardo (the staff involved in the deliberate indifference claim); and Sergeant Sullivan; Officer A. Miller; Officer G. Peperone; Officer Montanari[2]; and Officer M. Lessard (the corrections officers involved in the excessive force claims). After this initial screening, several motions to amend the Complaint and for appointment of counsel were denied, and discovery proceeded before the Magistrate Judge who resolved discovery motions, as well as additional motions for appointment of counsel.

In October of 2005, nearing the end of the discovery period, the Magistrate Judge granted Plaintiff's fifth request for appointment of counsel, having found a threshold showing of some likelihood of success on the merits. Shortly thereafter, Defendants filed the instant Motion for Summary Judgment, but Plaintiff's counsel neither responded to it nor appeared for oral argument thereon before Judge John T. Elfvin, the then-assigned District Judge. Consequently, the matter was deemed submitted for decision on January

---

[2] This Defendant's name is misspelled in the Complaint as "Montanar". The Clerk of the Court is directed to change the Docket to reflect the correct spelling.

27, 2006.

Seven months later, while the matter was pending decision, the Court learned that Plaintiff's counsel had been incapacitated. The motion was re-opened and another opportunity to respond was granted, however, new counsel was eventually required – and appointed on November 17, 2006. Thereafter, Plaintiff's responses were filed and the matter was again submitted for decision on April 13, 2007. This case was reassigned to the undersigned on October 17, 2007, after Judge Elfvin elected to take inactive status. This Court has taken into consideration all proceedings before Judge Elfvin in rendering its decision herein.

**B.     Facts**

**1. The Deliberate Indifference Claim**

Unless otherwise noted, the following facts are undisputed and are material to the deliberate indifference claim:

*a). Medical Treatment at Attica Correctional Facility ("Attica")*

While incarcerated at Attica, Plaintiff complained of, and was receiving regular treatment for, lower back pain due to a prior surgery that entailed the removal of a spinal disc. This treatment involved dozens of medical exams and consultations, regular physical therapy, numerous X-rays, an MRI exam (Magnetic Resonance Imaging), and the prescribing of various medications and various other medical apparatus designed to assist with movement or alleviate pain. Plaintiff was also advised regarding surgical options and eventually scheduled for elective surgery, which was delayed (and ultimately never took

place) in order to pursue a more aggressive course of physical therapy. (¶¶ 8 - 81).[3]

*b).  Medical Treatment at OCF and the Medical Limitation Slips*

Upon his transfer to OCF on or about April 6, 1999, Plaintiff's incoming review papers noted his lower back problems and the prior disc removal and he was given a permit for a lower bunk.  The next day he was seen by health personnel for complaints of lower back pain.  He was prescribed ibuprofen and a topical analgesic and signed up for a doctor's appointment ("MD callout").  Two days later, prior to the MD callout being completed, upon Plaintiff's persistent complaints of pain, the ibuprofen and analgesic were issued. (¶¶ 82 - 84).  From April 12, 1999 to April 30, 1999, Plaintiff continued to complain of pain but missed two MD callouts. (¶¶ 86 - 92).

OCF is what is known as a 'program facility', meaning that participation in a vocational program is mandatory.  (See Docket No. 82, Ex. F).  From May to November, 1999, Plaintiff was assigned to the Commercial Arts program. (¶ 133).  This program does not require any heavy lifting, bending, or standing for more than fifteen (15) minutes at a time and participants are permitted to stand and stretch at any time throughout. (¶ 112).

On May 4, 1999, Plaintiff indicated a misunderstanding with the MD callout procedure due to his language barrier.  Another MD callout was issued.  On May 7, 1999, Defendant Sinha examined plaintiff pursuant to the MD callout.  He ordered an X-ray of Plaintiff's lower spine and prescribed physical therapy.  The X-ray was performed six (6) days later. (¶¶ 93 - 96).

---

[3] Unless otherwise noted, the paragraph references in this section are from Defendants' Statement of Undisputed Facts (Docket No. 90) and have been admitted, or otherwise not disputed, by Plaintiff. (See, Docket No. 100).

Plaintiff complained to OCF health personnel five (5) more times between May 18, 1999 and June 21, 1999, when he was again examined by Sinha.  During this one month period, he requested stronger pain medication, a backboard, a single cube, and a change in his limitation orders.  Upon examination, Sinha approved the request for a single cube and referred Plaintiff to an orthopedic specialist.  He was seen by the specialist on July 9, 1999. (¶¶ 97 - 103).

On July 14, 20 and 27, 1999, Plaintiff renewed his requests for stronger pain medication and a backboard.  He was issued an MD callout to address these requests.  On August 2, 1999, Plaintiff was again examined by Sinha who referred him to a spine specialist based on the results of the orthopedic specialist consult.  Plaintiff complained of pain to OCF health personnel on August 5 and 13, 1999.  He was prescribed pain medication.  During this time he also requested to be in "one program".  A medical limitation slip was issued by OCF health personnel on August 13, 1999 (hereinafter the "first limitation slip"), stated that Plaintiff could not stand for more than 15 minutes or lift over 25 pounds. (Docket No. 99-2, Ex A).

On September 9, 1999, Plaintiff wrote a letter to Defendant Minardo requesting a transfer or release out of the Commercial Arts program.  In it, he urged that he was "medically unable to participate in the Commercial Arts programs, notwithstanding the fact that the frisks I have to go through twice daily are more than enough to medically incapacitate me".  He also attached a copy of the August 13th limitations slip. (Docket No. 99-2, Ex. B).  Four days later, on September 13, 1999, Minardo responded with a written message to Plaintiff that said: "per my conversation with . . . [the vocational supervisor], it

is highly unlikely that you would be required to stand for more than 15 minutes while awaiting a pat frisk out of your Commercial Arts program. Therefore, no program change will occur at this time." (Docket No. 83, Ex. C).

On September 17, 1999, Plaintiff requested to be seen by another specialist and Sinha scheduled a follow-up appointment at the Strong Hospital orthopedic clinic for October 20, 1999. At this appointment, the specialist recommended that Plaintiff be put on a course of ibuprofen, undergo physical therapy if there was no improvement with medication, be given a back brace should he request one, and not bend forward for prolonged periods of time. A follow-up examination after three months was recommended. (¶¶ 121, 129, 131). No new limitation slip was issued at this time.

On November 3, 1999, Plaintiff informed OCF health personnel that his medical situation had changed. On November 5, 1999, he was seen by Dr. Sutton for both lower back and shoulder pain. Another medical limitations slip was issued (hereinafter "the new slip") which indicated that Plaintiff could not stand for more than 15 minutes or lift over 25 pounds (the exact same limitations as in the first limitation slip) but also stated that he was "unable to participate in program due to low back pain s/p laminectomy." (Docket No. 99-2, Ex. D). It did not identify the program or the duration of the inability to participate.

Four days later, on November 9, 1999, rather than waiting until the next Program Committee quarterly review to request the change which was the usual procedure, Plaintiff attempted to present the new slip directly to the program instructor prior to the beginning of class. (¶¶ 124, 136). The incidents which form the basis of his excessive force claim ensued. At this time, however, health personnel was consulted with respect to the new slip

*vis a vis* Plaintiff's specific limitations. The health personnel records noted that the lifting and standing limitations were not relevant to the Commercial Arts program and there was no clarification for the program restriction language. (¶ 147). The Disciplinary proceedings that followed this incident requested and obtained clarification of the 'unable to participate' language with a fuller and more specific description of Plaintiff's medical limitations. (Docket No. 82, Ex. F, pp. 37, 39 - 40, 45). However, Plaintiff had already been effectively removed from the program due to his hospitalization. (See Docket No. 82, Ex. F, pp. 46 - 47).

**2. The Excessive Force Claims**

One of Plaintiff's excessive force claims is based on the events of November 9, 1999. Upon a review of the evidence, this Court finds the following facts to be undisputed and material to this claim:

On November 8, 1999, Plaintiff told the Commercial Arts instructor that he was going to make a stand and would "go to the box" rather than attend the program in pain. The next day, Plaintiff reported to the vocational desk, presented the new limitation slip to the desk officer and stated that he would not be attending the program that evening. He was ordered to sit in the lobby area while the Vocational Officer, Defendant Miller, was called. (¶¶ 140, 145 - 146).

Thereafter, Plaintiff was approached by Defendant Miller, who directed him to report to class. Plaintiff refused. Defendant Sullivan, the Sergeant on duty at the time, was then called to the scene to assess the situation. Plaintiff also refused several direct orders made by Defendant Peperone to sit quietly and wait to be questioned by Defendant

Sullivan. The parties dispute the extent of Plaintiff's disruptiveness regarding both the refusal to report to class and to sit quietly. Upon his arrival, Sullivan ordered Defendant Montanari to handcuff Plaintiff. (Docket No. 100, ¶¶ 140 - 142, 149 - 150).

The remaining facts relative to this incident are substantially disputed by the parties. Defendants deny that they pushed, hit, kicked, choked or physically abused Plaintiff in any way. (¶ 153). Plaintiff alleges that Sullivan verbally abused him and that Peperone grabbed him around the neck and slammed him against the wall. He then describes an attack wherein Sullivan ordered Defendant Montanari to handcuff Plaintiff, and Peperone stretched Plaintiff's legs open then kicked and hit him several times, pressing his neck against the wall for several minutes until he was choked into unconsciousness. (Docket No. 100, ¶¶ 24 - 25, 32 - 33).

Plaintiff claims he awoke on the floor of the infirmary where he saw Sullivan and three other officers standing over him and laughing. He claims he suffered injuries to his neck, right thumb, forehead, left shoulder, right hip and lower back resulting in numbness in his legs and requiring his confinement to a wheelchair for several weeks. While the extent of Plaintiff's injuries are disputed, it is not disputed that he was hospitalized in the OCF infirmary for ten days and used a wheelchair for some time thereafter.

### III.  DISCUSSION AND ANALYSIS

**A.  Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).  A fact is "material" if it "might affect the outcome of the suit under governing law." Anderson, 477 U.S. at 248.  In a case where the non-moving party bears the ultimate burden of proof at trial, the movant may satisfy its burden by pointing to the absence of evidence supporting an essential element of the non-moving party's claim. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986).

At this stage, the function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.  Thus, summary judgment is not appropriate if "there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Ford, 316 F.3d at 354.

When deciding a motion for summary judgment, a court must view the evidence and the inferences drawn from the evidence "in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed.2d 142 (1970).  However, the party against whom summary judgment is sought "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002). "Only when reasonable minds could not differ as to the import of evidence is summary

judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

**B.     Plaintiff's Constitutional Claims**

Plaintiff brings his constitutional claims against Defendants pursuant to 42 U.S.C. § 1983 which imposes liability upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. *See* 42 U.S.C. § 1983. On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution. *See* Graham v. Connor, 490 U.S. 386, 393-94,109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979)). Accordingly, as a threshold matter in reviewing claims brought pursuant to § 1983, it is necessary to precisely identify the constitutional violations alleged. *See* Baker, 443 U.S. at 140. Here, Plaintiff asserts claims under the Eighth Amendment to the United States Constitution.

The Eighth Amendment applies to the States through the Fourteenth Amendment, and "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." Wilson v. Seiter, 501 U.S. 294, 297, 11 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991); U.S. CONST. AMEND. VIII. As such, prison conditions and the treatment prisoners receive while incarcerated are subject to scrutiny under the Eighth Amendment. *See* DeShaney v. Winnebago County Dept. of Social Svcs., 489 U.S. 189, 199-200, 109 S.Ct. 998, 1005-1006, 103 L.Ed.2d 249 (1989).

"A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components-one subjective, focusing on the defendant's motive for his conduct, and

the other objective, focusing on the conduct's effect." Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000) (citing Hudson v. McMillian, 503 U.S. 1, 7-8, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992); Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999)).

"The subjective component of the claim requires a showing that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness' " in light of the particular circumstances surrounding the challenged conduct." Sims, 230 F.3d at 21 (citing Blyden, 186 F.3d at 262; Wilson, 501 U.S. at 299; Davidson v. Flynn, 32 F.3d 27, 30 & n. 2 (2d Cir.1994)).  The objective component is "contextual and responsive to contemporary standards of decency." Id. (quoting Hudson, 503 U.S. at 8).

**1. The Excessive Force Claims**

An official's use of force violates the Eighth Amendment when the force used is "objectively, sufficiently serious," and the prison official involved has "a sufficiently culpable state of mind." Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997).  The subjective standard – that the prison officials involved had a wanton state of mind – involves an evaluation of whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993) (internal citations and quotations omitted).  Further, "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident." Hudson, 503 U.S. at 9.

*a). The November 9, 1999 Incident*

Defendants argue that Plaintiff has failed to produce evidence that: (1) objectively,

the alleged actions were sufficiently serious to reach constitutional dimensions; or (2) subjectively, the defendants acted with a sufficiently culpable state of mind.  Defendants argue that the use of force was *de minimus* and resulted in minimal injury.  They further argue that they did not act wantonly or with a sufficiently culpable state of mind, but rather, applied force in order to maintain control and order in the correctional facility.

Plaintiff urges, *inter alia*, that the undisputed fact that he was rendered unconscious and required a ten day hospital stay is sufficient to defeat summary judgment.  He also disputes the extent of his disruptiveness, but admits that he refused to comply with Defendant Peperone's orders to sit and be quiet while awaiting Sullivan's arrival.  Plaintiff maintains that he could not sit continuously as directed due to his back pain, and he denies acting in a disruptive or threatening manner. (Docket No. 100, p. 39).

In this Court's view, the existence of material issues of fact precludes summary judgment on this claim.  Viewing the evidence in a light most favorable to the non-moving party, this Court finds that a jury could reasonably credit Plaintiff's claim that he was verbally abused, slammed against a wall, kicked and hit several times, and had his neck pressed against the wall until he was choked unconscious.  It could also find that this use of force is inconsistent with contemporary standards of decency, was not *de minimus,* and was with malicious intent and not for the purpose of maintaining order.  Thus, a jury could find a violation of the Eighth Amendment with respect to this incident.

Additionally, while there are disputed questions regarding the extent of Plaintiff's injuries, contrary to Defendants' arguments, a reasonable jury could find that they were more than minimal.  Nevertheless, the extent of Plaintiff's injuries provides no basis for

dismissal of his claim if it is determined that the blows directed at him were not *de minimis* for Eighth Amendment purposes. Hudson, 503 U.S. at 10.

Therefore, there are questions of fact material to this claim with respect to the force used, whether it was *de minimus*, and whether it was used in a good faith effort to maintain or restore order or applied maliciously or sadistically to cause harm.  Therefore, summary judgment is precluded on this cause of action with respect to Defendants Peperone, Sullivan and Montanari – the defendants involved in the alleged assault of November 9, 1999.

However, Plaintiff fails to allege or establish sufficient personal involvement to support an excessive force claim against Defendant Miller.  Personal involvement in the deprivation of federal constitutional rights is the *sine qua non* of liability under § 1983.  *See* Haygood v. City of New York, 64 F.Supp.2d 275, 280 (S.D.N.Y. 1999).  Moreover, it is well settled in this Circuit that personal involvement by defendants in cases alleging constitutional deprivations is a prerequisite to an award of damages under § 1983.  *See* McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977); Richardson v. Coughlin, 101 F.Supp.2d 127, 129 (W.D.N.Y. 2000); Pritchett v. Artuz, No. 99 Civ. 3957 (SAS), 2000 WL 4157, *5 (S.D.N.Y. Jan. 3, 2000).  The Second Circuit construes personal involvement in this context to mean "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates."  Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996); *see also* Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).  The only fact of Miller's personal involvement in the alleged assault is that he directed Plaintiff to report

to the Commercial Arts class and, when Plaintiff refused, Miller summoned Sullivan. In this Court's view, no reasonable trier of fact could find that this minimal involvement is sufficient to sustain Miller's liability under § 1983 and summary judgment will be granted with respect to this defendant.

      *b). The December 14, 1999 Incident*

The Complaint also alleges an excessive force claim relating to an incident on December 14, 1999 involving Defendants Minardo and Lessard, and other unknown Corrections Officers. Defendants have sufficiently supported their motion regarding this cause of action. At oral argument herein, Plaintiff's counsel stated that Plaintiff will not be pursuing his claim relative to this incident. Therefore, the details of such need not be specifically discussed herein. Nevertheless, this Court has reviewed the undisputed evidence regarding this incident and finds that no reasonable trier of fact could find for the Plaintiff on this cause of action. Hence, the summary judgment motion relative to this incident and Defendants Minardo and Lessard will be granted.

      **2. The Deliberate Indifference Claim**

While Defendant's motion papers tend to suggest that Plaintiff's complains that he did not receive an appropriate level of medical care for his back problems constitute part of his deliberate indifference claim, in his response to this motion, and at oral argument herein, Plaintiff has made clear that this is not part of his claim. Rather, his claim asserts that the refusal to release him from the Commercial Arts program, as well as the medical care he received after the November 9, 1999 incident form the bases of his constitutional claims. (See Docket No. 99, pp. 3, 12 - 14). This clarification is borne out in the pleadings.

The claim relating to the refusal to release him from the Commercial Arts program is asserted against Defendant Minardo only. (Docket No. 1, p 6; Docket No. 2, ¶ 46 – Second Cause of Action). The claim relating to the medical care given after the November 9, 1999 incident is asserted against Defendants Sinha, Baccacio and Fassio only (Docket No. 1, p. 7; Docket No. 2, ¶ 54 – Sixth Cause of Action).

It is well-settled that deliberate indifference to a prisoner's serious medical needs can constitute cruel and unusual punishment, in violation of the Eighth Amendment (made applicable to the states through the Fourteenth Amendment). *See* Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir.1994). Like the excessive force claim, the standard for a deliberate indifference claim...

> ...embodies both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324, 115 L. Ed.2d 271 (1991). *See* Nance v. Kelly, 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J., dissenting) (standard contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain") (citations omitted). Second, the charged official must act with a sufficiently culpable state of mind. *See* Wilson, 501 U.S. at 298, 111 S. Ct. at 2324. Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm. *See* Farmer v. Brennan, 511 U.S. 825, ----, 114 S. Ct. 1970, 1978, 128 L. Ed.2d 811 (1994). More specifically, a prison official does not act in a deliberately indifferent manner unless that official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at ----, 114 S. Ct. at 1979.

Hathaway, 37 F.3d at 66.

Defendants first argue generally that Plaintiff cannot prove that his back problem constituted a condition of great urgency, one that may produce death, degeneration or extreme pain. Defendants then argue that the focus should be more on the risk of harm due to the deprivation rather than the underlying seriousness of the medical condition, or that the seriousness of the condition is considered to the extent that a deprivation would effect that condition. They further argue that Plaintiff fails to raise a question suggesting a culpable state of mind of any of the Defendants.

Plaintiff urges that there are disputed material facts with respect to the objective and subjective elements. As it relates to the subjective component, Plaintiff focuses on the refusal to release him from the program despite the doctor's excuse. Plaintiff urges that there is certainly a dispute as to whether his condition and the deprivations alleged caused extreme pain.

This Court has reviewed the medical records and other evidence submitted by the parties. Based on that review, which was done in a light most favorable to Plaintiff, this Court finds that Plaintiff has failed to demonstrate the existence of a disputed material fact regarding both of these deliberate indifference claims. Although there may be questions of fact upon which a jury could find that Plaintiff had serious medical needs (*see, e.g.* Hathaway, 37 F.3d at 67), Plaintiff has failed to raise a material question with respect to the subjective component in each claim.

*a). The Refusal to Release Plaintiff from the Commercial Arts Program*

Plaintiff cannot demonstrate that Defendant Minardo acted with a sufficiently culpable state of mind. The first medical limitation slip was issued on August 13, 1999 and

stated simply that Plaintiff could not stand for more than 15 minutes or lift over 25 pounds. Plaintiff attached a copy of this slip when he wrote a letter to Defendant Minardo on September 9, 1999 requesting a program change, claiming that he was medically unable to participate in the Commercial Arts programs, and complaining that the pat down procedures attendant to the program would result in prolonged standing.  Within 4 days, Defendant Minardo responded in writing, denying the request and noting his conversation with the vocational supervisor that it was unlikely that a pat frisk out of the Commercial Arts program would require more than 15 minutes standing.  Further, it is undisputed that the Commercial Arts program does not require any heavy lifting, bending, or standing for more than fifteen (15) minutes at a time and participants are permitted to stand and stretch at any time throughout. (¶ 112).  There is no evidence that the denial was based on anything other than the fact that Plaintiff's standing limitations were not implicated by either the requirements of the program or the pat frisk procedures attendant to it.

When Plaintiff was seen by Dr. Sutton approximately two months later, and the new limitations slip issued, it indicated the exact same physical limitations with respect to standing and lifting but also included the conclusion that Plaintiff was "unable to participate in program due to low back pain s/p laminectomy."  It did not indicate in which program the patient was unable to participate.

The gravamen of Plaintiff's argument in opposition to the instant motion relies on this "unable to participate" language.  The fatal flaw in this argument is that there is no evidence that Defendant Minardo (the only defendant against whom this claim is asserted) ever saw the new limitations slip containing this language.  Rather, the undisputed

evidence is that Plaintiff attempted to present this slip directly to the program instructor, and the corrections officer on duty (Defendant Miller) on November 9, 1999 prior to the beginning of class. The disruption caused by this approach necessarily halted any further consideration that may have been given to the slip.

This evidence fails to support a finding that Defendant Minardo knew and disregarded an excessive risk to Plaintiff's health and summary judgment will be granted on this cause of action asserted against him.

*b). The Medical Care Given after the November 9, 1999 Incident*

The totality of the factual allegations in support of this claim against these defendants is that Defendant Baccacio failed to accurately document the incident in his medical records (Docket No. 2, ¶ 30), that Plaintiff was dumped head first from the stretcher into the hospital bed when he was brought into the infirmary[4] immediately following the incident (Docket No. 2, ¶ 31), that there was a two week delay after the incident before he was seen by an Orthopedist during which he was also not given the medication prescribed earlier by that Orthopedist. (Docket No. 2, ¶ 35).

Even if the medical or other evidence supported such allegations (a finding that this Court need not make), the best that this establishes is that Plaintiff did not agree with the level of medical care he received after the incident. This does not raise a constitutional claim. "[I]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment

---

[4] Plaintiff does allege that Defendant Sinha, Baccacio or Fassio did the dumping.

violation." <u>Chance v. Armstrong</u>, 143 F.3d 689, 703 (2d Cir. 1998).

There are other grounds under which this Court could dismiss the deliberate indifference claims against one defendant or another, such as qualified immunity or lack of personal involvement. In light of the above findings, a ruling on these grounds is unnecessary.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted in part and denied in part. Plaintiff's Eighth Amendment claims for deliberate indifference to serious medical needs are dismissed in their entirety. Plaintiff's Eighth Amendment claim for excessive force relating to the December 14, 1999 incident is dismissed. Plaintiff's Eighth Amendment claim for excessive force relating to the November 9, 1999 incident is dismissed only as against Defendant Miller.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 81) is GRANTED in part and DENIED in part consistent with the foregoing decision.

FURTHER, that Plaintiff's Eighth Amendment claims alleging deliberate indifference to serious medical needs and alleging excessive force based on the December 14, 1999 incident are DISMISSED in their entirety.

FURTHER, that Plaintiff's Eighth Amendment claim against Defendant Miller alleging excessive force based on the November 9, 1999 incident is DISMISSED.

FURTHER, that the Clerk of the Court shall terminate DR. SINHA, NURSE

BACCACIO, NURSE BETTY FASSIO, E. MINARDO, OFFICER A. MILLER and OFFICER M. LESSARD as Defendants to this action.

FURTHER, that the Clerk of the Court is directed to change the Docket to reflect the correct spelling of Defendant Montanari's name.

FURTHER, that Plaintiff's sole remaining claim is his Eighth Amendment claim for excessive force against Defendants Sullivan, Peperone and Montanari, relating to the November 9, 1999 incident.

SO ORDERED.


Dated:     February 6, 2008
           Buffalo, New York

                                                /s/William M. Skretny
                                                WILLIAM M. SKRETNY
                                                United States District Judge